# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| BRIDE MINISTRIES, NFP, and DANIEL DUVAL § § § § v. § § JONATHAN DEMASTER and JENNIFER § BREEDON § | Civil Action No. 4:20-CV-402 Judge Mazzant |

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiffs Bride Ministries, NFP ("Bride Ministries") and Daniel Duval's ("Duval") Emergency Motion for Preliminary Injunction (Dkt. #11). Having considered the motion and the relevant pleadings, the Court finds that the motion should be granted.

### BACKGROUND

This case arises from the alleged theft and disclosure of Bride Ministries' confidential information by Defendants Jonathan DeMaster ("DeMaster") and Jennifer Breedon ("Breedon"). Bride Ministries hired DeMaster to assist with its website and to offer technical support (Dkt. #1 at p. 3; Dkt. #11, Exhibit 1). DeMaster signed an employment contract with Bride Ministries, where he agreed not to disclose Bride Ministries' confidential information (Dkt. #1 at p. 7; Dkt. #11, Exhibit 2). After a few months of working, however, DeMaster was fired by Duval, the director of Bride Ministries (Dkt. #1 at p. 3; Dkt. #11, Exhibit 1 at p. 4).

After DeMaster was fired, Breedon—DeMaster's wife—sent a slideshow to Todd Edwards, a board member of Bride Ministries (Dkt. #1 at p. 3; Dkt. #11, Exhibit 1 at p. 4). The slideshow contained Bride Ministries' confidential and proprietary information, which DeMaster purportedly shared with Breedon (Dkt. #1 at 4; Dkt. #11, Exhibit 3). The slideshow included Bride

Ministries' donor information, contractor information, tax documents, and copyrighted materials (Dkt. #1 at pp. 3–4; Dkt. #11, Exhibit 3). The slideshow also included screenshots of the contents of Bride Ministries' SYNC drive—a server containing copies of all of Bride Ministries' confidential and proprietary information (Dkt. #1 at p. 5; Dkt. #11, Exhibit 3).

On May 15, 2020, Plaintiffs filed this suit against Defendants, asserting claims of breach of contract, breach of fiduciary duty, unjust enrichment, civil conspiracy, and violations of the Defend Trade Secrets Act (Dkt. #1). Then, on May 20, 2020, Plaintiffs filed their motion for preliminary injunction, requesting the Court to enjoin Defendants from disseminating Bride Ministries' confidential and proprietary information. On May 28, 2020, the Court heard arguments from Plaintiffs regarding the preliminary injunction.[1]

## ANALYSIS

Plaintiffs ask the Court to enjoin Defendants from divulging Bride Ministries' confidential information within their possession. Plaintiffs maintain that they have established that they can show all four required elements to obtain a preliminary injunction. The Court addresses the four elements in turn.

**I.  Substantial Likelihood of Success on the Merits**

Plaintiffs argue that they have a substantial likelihood of success on the merits of their breach of contract claim. The Court agrees.

"Injunction is a proper remedy where an employee has breached, or is in such a position that it is likely that he will breach, a confidentiality agreement." *Picker Int'l, Inc. v. Blanton*, 756 F. Supp. 971 (N.D. Tex. 1990). To establish that DeMaster breached the confidentiality provision of his employment contract, Bride Ministries must show: (1) the existence of a valid contract;

---

[1] Defendants did not make an appearance at the hearing on May 28, 2020 (Dkt. #18). Defendants also did not file a response to Plaintiffs' motion for preliminary injunction.

(2) performance or tendered performance by Bride Ministries; (3) breach of the contract by DeMaster; and (4) damages to Bride Ministries resulting from that breach. *Wells v. Minn. Life Ins. Co.*, 885 F.3d 885, 889 (5th Cir. 2018) (citing *Hunn v. Dan Wilson Homes, Inc.*, 789 F.3d 573, 579 (5th Cir. 2015)).

First, Plaintiffs established that there was a valid contract between Bride Ministries and DeMaster because DeMaster signed Bride Ministries' employment contract that contained the confidentiality provision, prohibiting him from disclosing Bride Ministries' confidential and proprietary information[2] (Dkt. #11, Exhibit 2). Second, Plaintiffs showed that Bride Ministries performed under the contract by paying DeMaster for his work (Dkt. #11, Exhibit 1; Dkt. #11, Exhibit 2). Third, Plaintiffs established that DeMaster breached the employment contract when he divulged Bride Ministries' confidential information to Breedon in violation of the contract's confidentiality provision (Dkt. #11, Exhibit 1; Dkt. #11, Exhibit 2 at pp. 4–6; Dkt. #11, Exhibit 3 at pp. 3–13). Finally, Plaintiffs established that Bride Ministries was damaged when its confidential and proprietary information was disclosed to third parties (Dkt. #11, Exhibit 1). Accordingly, the Court finds that Plaintiffs have demonstrated a substantial likelihood of success on their breach of contract claim.

## II. Substantial threat of Irreparable Harm

Plaintiffs must demonstrate they are "likely to suffer irreparable harm in the absence of preliminary relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). "[H]arm is irreparable where there is no adequate remedy at law, such as monetary damages." *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011). However, "the mere fact that economic damages may be available does

---

[2] Specifically, the confidentiality provision in DeMaster's employment contract prohibits him from disclosing or threatening to disclose, among other things, Bride Ministries' products, business affairs, trade secrets, customer lists, copyrights, and other proprietary information (Dkt. #11, Exhibit 2 at p. 3).

3

not always mean that a remedy at law is 'adequate.'" *Id.* An injunction is appropriate only if the anticipated injury is imminent and not speculative. *Winter*, 555 U.S. at 22.

Here, Plaintiffs are likely to suffer irreparable harm without a preliminary injunction. Defendants possess and have already disclosed Bride Ministries' confidential information to third parties (Dkt. #11, Exhibit 1; Dkt. #11, Exhibit 3). There is also a risk of future disclosure of Bride Ministries' confidential information. *See Stoneeagle Servs., Inc. v. Gillman*, No. 3:11-CV-2408-P, 2011 WL 13129085, at *3 (N.D Tex. Oct. 14, 2011) (stating that there was irreparable harm due to the defendants' possession and risk of disclosure of trade secrets and confidential information). Such a disclosure could result in a loss of business to Bride Ministries through the loss of donations, goodwill, and profits from book sales (Dkt. #11 at p. 10). These losses could not easily be calculated; therefore, there is a substantial threat of irreparable harm in the absence of an injunction. *See id.* (holding that losses to the business due to the defendants' disclosure of trade secrets and confidential information were difficult to calculate).

## III. Balance of Hardships

When deciding whether to grant an injunction, "courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (citation omitted). In other words, this element "involves an evaluation of the severity of the impact on defendant should the temporary injunction be granted and the hardship that would occur to plaintiff if the injunction should be denied." 11A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 2948.2 (3d ed. 2018).

The Court finds that the hardships weigh in favor of Plaintiffs. A preliminary injunction preventing DeMaster from disseminating Bride Ministries' confidential information "will not

impose any new obligation on [him]." *Sid Richardson Carbon & Gasoline Co. v. Internorth, Inc.*, 595 F. Supp. 497, 501 (N.D. Tex. 1984). Rather, a preliminary injunction would merely require DeMaster to adhere to his employment contract's confidentiality provision—an obligation that already exists. *See id*. (stating that the balance of equities favors the plaintiffs when the preliminary injunction merely enforces the defendant's obligations under its contract with the plaintiffs). Therefore, the hardships weigh in favor of granting a preliminary injunction.

## IV. Public Interest

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24 (quoting *Weinberger*, 465 U.S. at 312). Where, as here, there is a breach of a contractual confidentiality provision, there is a public interest in upholding the principles of contract. *See Corp. Relocation, Inc. v. Martin*, No. 3:06-CV-232-L, 2006 WL 4101944, at *18 (N.D. Tex. Sept. 12, 2006). Specifically, "the public has an interest in knowing and understanding that agreements between parties will be honored, that contracts will be enforced, and that confidential information . . . will not be disclosed." *Id.* Furthermore, the public "has an interest in knowing and understanding that persons who breach their agreements may not profit or otherwise benefit from such conduct." *Id.* Based on this, the Court finds that the public interest will not be disserved by a preliminary injunction prohibiting DeMaster from disclosing Bride Ministries' confidential information.

## V. Scope of the Preliminary Injunction

Finally, the Court must determine the scope of the preliminary injunction. To address the substantial threat of irreparable injury, the injunction must apply not only to DeMaster but also to Breedon. *See Mach 1 Air Servs., Inc. v. Bustillos*, No. EP-13-00088-DCG, 2013 WL 12108595,

at *11 (W.D. Tex. May 10, 2013) (enjoining certain defendants from violating a contract which they were not parties to). Indeed, Breedon—like DeMaster—has already disseminated Bride Ministries' confidential information to third parties (Dkt. #11, Exhibit 3). Notably here, while Breedon is not a party to DeMaster's employment contract with Bride Ministries, she may still bound by the injunction pursuant to Rule 65(d)(2). *Id*. (citations omitted); FED. R. CIV. P. 65(d)(2) (defining "persons bound" as "(A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert . . . with anyone described in Rule 65(d)(2)(A) or (B)"). As such, the Court applies this preliminary injunction to Breedon, as well as DeMaster.

## CONCLUSION

It is therefore **ORDERED** that Plaintiffs Bride Ministries, NFP and Daniel Duval's Emergency Motion for Preliminary Injunction (Dkt. #11) is hereby **GRANTED**. Accordingly, Defendants Jonathan DeMaster and Jennifer Breedon, along with Defendants' heirs, agents, employees, servants, representatives, attorneys, affiliates, and anyone with actual or constructive knowledge of a preliminary injunction from this Court, are hereby **ENJOINED** from, directly or indirectly, engaging in the following acts, without written authorization of Bride Ministries, Daniel Duval, or their undersigned legal representatives, or by further order of this Court:

1. Disseminating, divulging, conveying, or in any way disclosing Bride Ministries and Daniel Duval's proprietary, confidential, and trade secret information including but not limited to donors' confidential information, corporate documents, digital copyrighted manuals, digital copyrighted books, and any other information obtained from the SYNC Folder to any third party, whether an individual or corporation or entity of any description;

2. Selling, conveying, encumbering, profiting, or in any way using Bride Ministries and Daniel Duval's proprietary, confidential, and trade secret information including but not limited to donors' confidential information, corporate documents, digital copyrighted manuals, digital copyrighted books, customer/donor lists, and any other information obtained from the SYNC Folder for potential economic gain;

3. Copying, making duplicates, recording, or in any way manufacturing a duplicate of Bride Ministries and Daniel Duval's proprietary, confidential, and trade secret information including but not limited to donors' confidential information, corporate documents, digital copyrighted manuals, digital copyrighted books, and any other information obtained from SYNC Folder or from Bride Ministries or Daniel Duval;

4. Emailing, communicating, forwarding, discussing, or in any way representing the contents of Bride Ministries and Daniel Duval's proprietary, confidential, and trade secret information including but not limited to donors' confidential information, corporate documents, digital copyrighted manuals, digital copyrighted books, and any other information obtained from the SYNC Folder to any third party, whether an individual or corporation or entity of any description;

5. Accessing, hacking, logging in, signing in, or in any way acquiring access to Bride Ministries and Daniel Duval's proprietary, confidential, and trade secret information including but not limited to donors' confidential information, corporate documents, digital copyrighted manuals, digital copyrighted books, and any other information contained on the SYNC Folder or from Bride Ministries;

6. Conveying information, discussing, or in any way communicating with other churches regarding the contents of Bride Ministries and Daniel Duval's proprietary, confidential,

and trade secret information including but not limited to donors' confidential information, corporate documents, digital copyrighted manuals, digital copyrighted books, and any other information obtained from the SYNC Folder to any third party, whether an individual or corporation or entity of any description;

7. Conducting business on behalf of the Bride Ministries with actual, or implied authority regarding decisions including but not limited to financial, employment, customer, leasing, vending, and all other business decisions;

8. Misrepresenting to third parties any actual, apparent, or implied authority of Bride Ministries or David Duval for disclosure of the contents of Bride Ministries and Daniel Duval's proprietary, confidential, and trade secret information including but not limited to donors' confidential information, corporate documents, digital copyrighted manuals, digital copyrighted books, and any other information obtained from the SYNC Folder to any third party, whether an individual or corporation or entity of any description; or

9. Signing, endorsing, or granting actual or implied authority to any bank, lender, or third-party financing company regarding contents of Bride Ministries and Daniel Duval's proprietary, confidential, and trade secret information including but not limited to donors' confidential information, corporate documents, digital copyrighted manuals, digital copyrighted books, and any other information obtained from the SYNC Folder to any third party, whether an individual or corporation or entity of any description.

It is further **ORDERED** that Jonathan DeMaster and Jennifer Breedon shall turn over all materials regarding the contents of Bride Ministries and Daniel Duval's proprietary, confidential, and trade secret information including but not limited to donors' confidential information, corporate documents, digital copyrighted manuals, digital copyrighted books, and any other

information obtained from the SYNC Folder, which is currently in Jonathan DeMaster or Jennifer Breedon's (including their agents) physical or constructive possession.

It is further **ORDERED** that a bond of $300 shall be required to be posted by Plaintiffs before this preliminary injunction is effective.

**IT IS SO ORDERED**.
**SIGNED this 3rd day of June, 2020.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE