# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| BRIDE MINISTRIES, NFP, ET AL., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| | § | CIVIL ACTION NO.  4:20-CV-00402 |
| v. | § | Judge Mazzant |
| | § | |
| JONATHAN DEMASTER, ET AL., | § | |
| | § | |
| *Defendants*. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is Defendants' Motion to Dismiss Under Rule 12(b)(2), 12(b)(3), & 12(b)(6); or in the Alternative to Transfer Venue Under 28 U.S.C. §1404 (Dkt. #30).[1]  Having considered the motion and the relevant pleadings, the Court finds that Defendant's motion should be **DENIED**.

## BACKGROUND

This case arises from the alleged theft and disclosure of Bride Ministries' confidential information by Defendants Jonathan DeMaster ("DeMaster") and Jennifer Breedon ("Breedon"). Bride Ministries hired DeMaster to assist with its website and to offer technical support.  DeMaster signed an employment contract with Bride Ministries where he agreed not to disclose Bride Ministries' confidential information.  After a few months of working, Duval, the director of Bride Ministries, terminated DeMaster's employment.

After DeMaster was fired, Breedon—DeMaster's wife—sent a slideshow to Todd

---

[1] Plaintiffs objected to evidence submitted by Defendants (Dkt. #40).  The Court either reached its conclusion without the challenged evidence or considered it and still agreed with Plaintiffs.  Thus, the Court need not rule on the objections.

Edwards, a board member of Bride Ministries.  The slideshow contained Bride Ministries' confidential and proprietary information, which DeMaster purportedly shared with Breedon.  The slideshow included Bride Ministries' donor information, contractor information, tax documents, and copyrighted materials.  The slideshow also included screenshots of the contents of Bride Ministries' SYNC drive—a server containing copies of all of Bride Ministries' confidential and proprietary information.

On June 15, 2020, Defendants filed the present motion.  (Dkt. #30).  On August 6, 2020, Plaintiffs filed Responses to Defendants' Motion to Dismiss under Rule 12(b)(2), 12(b)(3), and 12(b)(6) (Dkt. #37) (Dkt. #38).  On August 13, 2020, Defendants filed a Reply to Plaintiffs' Response (Dkt. #51).  On November 19, 2020, the Court held a hearing regarding personal jurisdiction as to Breedon.

## LEGAL STANDARD

### Rule 12(b)(2) Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant.  FED. R. CIV. P. 12(b)(2).  After a non-resident defendant files a motion to dismiss for lack of personal jurisdiction, it is the plaintiff's burden to establish that *in personam* jurisdiction exists.  *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990) (citing *WNS, Inc. v. Farrow*, 884 F.2d 200, 202 (5th Cir. 1989)).

To satisfy that burden, the party seeking to invoke the court's jurisdiction must "present sufficient facts as to make out only a *prima facie* case supporting jurisdiction," if a court rules on a motion without an evidentiary hearing.  *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000).  When considering the motion to dismiss, "[a]llegations in [a] plaintiff's complaint are taken as true except to the extent that they are contradicted by defendant's affidavits."  *Int'l*

2

*Truck & Engine Corp. v. Quintana*, 259 F. Supp. 2d 553, 557 (N.D. Tex. 2003) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 282–83 n.13 (5th Cir. 1982)); *accord Black v. Acme Mkts., Inc.*, 564 F.2d 681, 683 n.3 (5th Cir. 1977).  Further, "[a]ny genuine, material conflicts between the facts established by the parties' affidavits and other evidence are resolved in favor of plaintiff for the purposes of determining whether a *prima facie* case exists."  *Id.* (citing *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 161, 1067 (5th Cir. 1992)).  However, if a court holds an evidentiary hearing, a plaintiff "must establish jurisdiction by a preponderance of the admissible evidence."  *In re Chinese Manufactured Drywall Prods. Liab. Lit.*, 742 F.3d 576, 585 (5th Cir. 2014) (citing *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241–42 (5th Cir. 2008)).

A court conducts a two-step inquiry when a defendant challenges personal jurisdiction. *Ham v. La Cinega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993).  First, absent a controlling federal statute regarding service of process, the court must determine whether the forum state's long-arm statute confers personal jurisdiction over the defendant.  *Id.*  And second, the court establishes whether the exercise of jurisdiction is consistent with due process under the United States Constitution.

The Texas long-arm statute confers jurisdiction to the limits of due process under the Constitution.  *Command-Aire Corp. v. Ont. Mech. Sales and Serv. Inc.*, 963 F.2d 90, 93 (5th Cir. 1992).  Therefore, the sole inquiry that remains is whether personal jurisdiction offends or comports with federal constitutional guarantees.  *Bullion*, 895 F.2d at 216.  The Due Process Clause permits the exercise of personal jurisdiction over a non-resident defendant when the defendant has established minimum contacts with the forum state "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v.*

*Washington*, 326 U.S. 310, 316 (1945).  Minimum contacts with a forum state can be satisfied by contacts that give rise to either general jurisdiction or specific jurisdiction.  *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994).

General jurisdiction exists only when the defendant's contacts with the forum state are so "'continuous and systematic' as to render them essentially at home in the forum State."  *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)); *see Cent. Freight Lines v. APA Transp. Corp.*, 322 F.3d 376, 381 (5th Cir. 2003) (citing *Helicopteros Nacionales de Colum., S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)).  Substantial, continuous and systematic contact with a forum is a difficult standard to meet and requires extensive contacts between a defendant and the forum.  *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008).  "General jurisdiction can be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed."  *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1992) (citation omitted).  However, "vague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction."  *Johnston*, 523 F.3d at 609 (citing *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 596 (5th Cir. 1999)).

Specific jurisdiction is proper when the plaintiff alleges a cause of action that grows out of or relates to a contact between the defendant and the forum state.  *Helicopteros*, 466 U.S. at 414 n.8.  For the court to exercise specific jurisdiction, the court must determine "(1) whether the defendant has . . . purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal

jurisdiction is fair and reasonable." *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).

Defendants who "'reach out beyond one state' and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for consequences of their actions." *Burger King Corp*., 471 U.S. at 475 (citing *Travelers Health Assoc. v. Virginia*, 339 U.S. 643, 647 (1950)).  Establishing a defendant's minimum contacts with the forum state requires contacts that are more than "random, fortuitous, or attenuated, or of the unilateral activity of another party or third person." *Id*.

"If the plaintiff successfully satisfies the first two prongs, the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable." *Seiferth v. Helicopteros Atuneros*, *Inc.*, 472 F.3d 266, 271 (5th Cir. 2006).  In this inquiry, the Court examines five factors: (1) the burden on the nonresident defendant; (2) the forum state's interests; (3) the plaintiff's interest in securing relief; (4) the interest of the interstate judicial system in the efficient administration of justice; and (5) the shared interest of the several states in furthering fundamental social policies.  *Burger King*, 471 U.S. at 477.  "It is rare to say the assertion of jurisdiction is unfair after minimum contacts have been shown." *McFadin v. Gerber*, 587 F.3d 753, 760 (5th Cir. 2009) (quoting *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999)).

### *Rule 12(b)(3) Motion to Dismiss*

Federal Rule of Civil Procedure 12(b)(3) allows a party to move to dismiss an action for "improper venue." FED. R. CIV. P. 12(b)(3).  Once a defendant raises improper venue by motion, "the burden of sustaining venue will be on [the] Plaintiff." *Cincinnati Ins. Co. v. RBP Chem. Tech., Inc.*, No. 1:07-CV-699, 2008 WL 686156, at *5 (E.D. Tex. 2008).  "Plaintiff may carry this burden by establishing facts that, if taken to be true, establish proper venue." *Id.* (citations

omitted).  The Court "must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." *Mayfield v. Sallyport Glob. Holdings, Inc.*, No. 6:16-CV-459, 2014 WL 978685, at *1 (E.D. Tex. 2014) (citing *Ambraco, Inc. v. Bossclip, B.V.*, 570 F.3d 233, 237–38 (5th Cir. 2009)).  In determining whether venue is proper, "the Court may look beyond the complaint to evidence submitted by the parties." *Ambraco*, 570 F.3d at 238.  If venue is improper, the Court must dismiss, "or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a); FED. R. CIV. P. 12(b)(3).

### *Rule 12(b)(6) Motion to Dismiss*

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted.  FED. R. CIV. P. 12(b)(6).  When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012).  The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).  The Court must then determine whether the complaint states a claim for relief that is plausible on its face.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600,

603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion.  First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 664.  Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief."  *Id.*  "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'"  *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted).  This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

### *28 U.S.C. § 1404 Motion to Transfer Venue*

Section 1404 permits a district court to transfer any civil case "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to 'an individualized, case-by-case consideration of convenience and fairness.'"  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).  The purpose of § 1404 "is to

prevent the waste 'of time, energy and money' and 'to protect the litigants, witnesses and the public against unnecessary inconvenience and expense . . .'" *Van Dusen,* 376 U.S. at 616 (quoting *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 27 (1960)).

The threshold inquiry when determining eligibility for transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed," or whether all parties consent to a particular jurisdiction. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). Once that threshold inquiry is met, the Fifth Circuit has held "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004).

The private interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*").

The public interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id.* These factors are neither exhaustive nor exclusive, and no single factor is dispositive. *Id.*

The party seeking transfer of venue must show good cause for the transfer. *Id.* The moving party must show that the transferee venue is "clearly more convenient" than the transferor venue. *Id.* The plaintiff's choice of venue is not a factor in this analysis, but rather contributes to the

8

defendant's burden to show good cause for the transfer.  *Id.* at 315 n.10 ("[W]hile a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege.").  However, "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected."  *Id.* at 315.  And while the multi-factor analysis is informative, ultimately, "the district court has broad discretion in deciding whether to order a transfer."  *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998) (quoting *Caldwell v. Palmetto State Sav. Bank*, 811 F.2d 916, 919 (5th Cir. 1987)).

## ANALYSIS

### *12(b)(2) Personal Jurisdiction*[2]

Defendants argue that this Court lacks personal jurisdiction over DeMaster under Federal Rule of Civil Procedure 12(b)(2). In support of their argument, Defendants claim that DeMaster does not maintain systematic or continuous ties to Texas, and that DeMaster is at home in Wisconsin.

Plaintiffs argue that DeMaster is subject to the Court's exercise of general personal jurisdiction.  Plaintiffs also argue that the conduct of DeMaster provided minimum contacts within Texas as to demonstrate purposeful availment to the Texas forum.

### *General Jurisdiction*

General jurisdiction over a defendant exists when that defendant's actions are so "continuous and systematic" as to render the defendant "essentially at home" in the forum state. *Daimler AG*, 571 U.S. at 127.  DeMaster is domiciled in and works from Wisconsin.  Plaintiffs

---

[2] On November 19, 2020, the Court held a telephonic hearing regarding personal jurisdiction over Breedon.  At that hearing, Breedon consented to the Court's personal jurisdiction.  Thus, the Court will proceed in its analysis as to DeMaster only.

argue that DeMaster became "essentially at home" in Texas by signing a consulting agreement and performing services under that agreement for a period of three months.  However, the contacts required to meet the general personal jurisdiction standards are typically assessed by evaluating contacts between the defendant and forum state "over a reasonable number of years." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008); *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1992).  The Court therefore concludes that the three months of remote working done by DeMaster for Plaintiffs does not meet the high burden required to establish general personal jurisdiction.

### *Specific Jurisdiction*

The Court lacks general personal jurisdiction over DeMaster. The Court must next determine whether it has specific personal jurisdiction.  For this analysis, the Court must first decide whether DeMaster has purposefully availed himself to Texas.  If the Court determines that purposeful availment exists as to DeMaster, then the Court must decide whether Plaintiffs' causes of action either arise out of or result from DeMaster's contacts.  Finally, the Court must determine whether the exercise of personal jurisdiction is fair and reasonable.

### *DeMaster*

DeMaster entered into a consulting agreement with Bride.  The contract provided that Texas law would apply to any interpretation or request for injunctive relief.  Additionally, DeMaster agreed to terms of employment that involved him traveling to Texas at least four times a year.  Despite DeMaster working remotely from Wisconsin, he did enter into an ongoing business relationship with Plaintiffs.  DeMaster also communicated regularly with Bride—whose principal place of business is in Texas— and Duval in furtherance of that business relationship.  The Court finds that through his contacts with Texas, DeMaster purposefully availed himself Texas.

Plaintiffs' causes of action against DeMaster arise out of his Texas-related contacts. Plaintiffs allege that DeMaster, in concert with Breedon, violated the Defend Trade Secrets Act of 2016.  DeMaster had access to alleged trade secrets due to his consulting agreement—a contract entered into in Texas.  Further, Plaintiffs argue that DeMaster violated the consulting agreement. Plaintiffs also contend that DeMaster breached a fiduciary duty arising out of the Consulting Agreement.  Finally, Plaintiffs allege civil conspiracy against DeMaster.  All of the causes of action stem from either the consulting agreement directly or the work and materials DeMaster had access to because of his employment with Plaintiffs.

The final inquiry made by the Court is whether the exercise of personal jurisdiction is fair and reasonable.  The burden is on DeMaster to show unfairness or unreasonableness.  *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006).  In Texas, courts assess whether asserting personal jurisdiction over a non-resident defendant would "offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co.* 326 U.S. at 316.  The Court considers five factors to determine whether DeMaster has met his burden:

> (1) the burden on the nonresident defendant; (2) the forum state's interest; (3) the plaintiff's interest in securing relief; (4) the interest of the interstate judicial system in the efficient administration of justice; and (5) the shared interest of the several states in furthering fundamental social policies.

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).  However, after minimum contacts have been shown, "it is rare to say the assertion of jurisdiction is unfair."  *McFadin v. Gerber*, 587 F.3d 753, 760 (5th Cir. 2009).

The Court first looks at the burden on the nonresident defendant.  DeMaster resides in Wisconsin.  He has four young children and no resources in Texas.  DeMaster does not have a convenient location to stay while litigating the matter in Texas.  A burden on DeMaster of litigating this case in Texas exists, especially considering the growing concerns surrounding COVID-19 and

the national emergency declared due to its continued spread.  This factor supports dismissing the case under Rule 12(b)(2).

Next, the Court considers Texas's interest in the litigation.  Texas does have an interest in the litigation.  DeMaster's consulting agreement included a choice-of-law provision requiring the agreement be covered by Texas law.  The parties contracted that Texas law would apply to all parts of the agreement.  Plaintiffs reside and conduct business in Texas.  All hard copies of the confidential and proprietary information given to DeMaster are exclusively located in Denton County, Texas.  DeMaster communicated daily with Bride's agents and volunteers located in Texas.  Texas's substantial relationship to both Plaintiffs and the transaction pushes this factor in favor of this Court exercising personal jurisdiction over DeMaster.

Third, the Court looks at the plaintiff's interest in obtaining convenience and effective relief—which Plaintiffs here undoubtedly have.  Plaintiffs are located in Texas.  All relevant documents and information are physically stored in Texas.  Presumably most, if not all, witnesses for Plaintiffs will be in Texas.  These facts strongly indicate that the Plaintiffs have an interest in litigating the case within the state of Texas.

Next, the Court considers the interest of the interstate judicial system in the effective administration of justice.  The Court has already issued a preliminary injunction in this case (Dkt. #19).  The Court is familiar with the parties and the claims presented.  The nature of the cause of action arises under federal law, and the interstate judicial system has an interest in the efficient administration of justice.  This Court is in the best position to effectuate that justice.  This factor therefore weighs in favor of exercising personal jurisdiction over DeMaster.

Finally, the Court looks at the shared interest of the several states in furthering fundamental social policies.  Plaintiffs allege claims and damages under the Federal Defend Trade Secrets Act.

12

Plaintiffs also claim DeMaster breached the consulting agreement, breached his fiduciary duty owed to Plaintiffs, that DeMaster was unjustly enriched by violating state laws against Plaintiffs, and that he participated in a civil conspiracy against Plaintiffs.  Wisconsin has an interest in ensuring that its citizens achieve fair and even-handed trials.  Texas has in interest in ensuring that its citizens are afforded timely and effective relief.  Both states therefore have an interest in furthering their respective fundamental social policies.  Thus, the Court finds this factor neutral.

The Court finds that the factors weigh more heavily in favor of determining that exercising personal jurisdiction over DeMaster is proper.  The Court now moves into the second part of the specific personal jurisdiction analysis as it relates to DeMaster.

Ultimately, "an essential criterion in all cases is whether the 'quality and nature' of the defendant's activity is such that it is 'reasonable' and 'fair' to require him to conduct his defense in that state." *Kulko v. Superior Court of California In and For City and Cty. of San Francisco*, 436 U.S. 84, 92 (1978).  The Court finds that DeMaster created a continuing relationship and continuing obligations with citizens of Texas.  *See Burger King Corp.*, 471 U.S. at 475.  The Court also finds that the contacts between DeMaster and Texas were more than merely "random, fortuitous, or attenuated, or of the unilateral activity of another party or third person."  *Id.* DeMaster knowingly contracted with a Texas company, signed an agreement that required Texas law to govern, communicated daily with Texas residents, and even agreed to travel to Texas for the job when necessary—at a minimum four times a year.  Thus, it is appropriate for this Court to exercise personal jurisdiction over DeMaster.

***12(b)(3) Improper Venue***

Defendants argue that venue is improper in this Court, and that the case could have been brought in the Eastern District of Wisconsin.  However, the existence of one proper venue does not preclude the existence of others.

Under 28 U.S.C. § 1391(b), civil actions may be brought in:

1. a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
2. a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated; or
3. if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391.  Defendants contend that each action raised by Plaintiffs occurred exclusively within Wisconsin, thus making this Court an improper venue.

Section 1391(b)(1) does support Defendants' position.  All defendants are residents of Wisconsin.  Thus, the Eastern District of Wisconsin is a proper venue.  That fact alone, however, does not necessarily foreclose this Court from also being a proper venue.  The analysis must therefore continue into § 1391(b)(2)—the crux of Plaintiffs' argument.

Plaintiffs argue that this Court is the proper venue pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in the Eastern District of Texas, Sherman Division.  Further, Plaintiffs argue that a substantial part of the property that is the subject of the action is situated within this District.

Plaintiffs allege various causes of action, including violations under the Defend Trade Secrets Act of 2016, breach of contract, breach of fiduciary duty, unjust enrichment, a request for accounting and constructive trust, and civil conspiracy.  The intangible nature of Defendants' alleged actions and Plaintiffs' alleged injuries make it difficult to pinpoint exactly where a

substantial part of the events giving rise to Plaintiffs' claims occurred.  However, this Court has previously held that "a substantial part of the events giving rise to theft and misappropriation of trade secrets causes of action may occur in the judicial district where the injuries occurred."  *Vine Oil & Gas LP v. Indigo Minerals, LLC*, 2019 WL 4140842, *5 (E.D. Tex. 2019).  More generally, a substantial part of the events or omissions may potentially occur "in tort actions, where the parties acted or where the injuries occurred; in contract actions, where the negotiations took place, where the contract was signed, where the performance of breach occurred; or the place where parties acted or were engaged in business."  O'Connell & Stevenson, Rutter Group Prac. Guide: FED. CIV. PROC. BEFORE TRIAL NAT. ED. ¶ 4:60 (2018). Further, the second prong of § 1391(b)(2) states that venue is proper in a judicial district where "a substantial part of the property that is the subject of the action is situated."  28 U.S.C. § 1391(b)(2).

Bride's principal place of business is in Denton County, Texas.  Duval also resides in Denton County.  The contract between Plaintiffs and DeMaster was entered into and was performable in Denton County.  All physical copies of the confidential information allegedly received and distributed by DeMaster are in Denton County.  Taking all of Plaintiffs' pleaded facts as true and resolving all conflicts in favor of Plaintiffs, the Court determines that the Eastern District of Texas, Sherman Division is a proper venue for this action.

### 12(b)(6) Motion to Dismiss

After reviewing the Complaint, the motion to dismiss, the response, and the reply, the Court finds that Plaintiff has stated plausible claims for purposes of defeating a Rule 12(b)(6) motion to dismiss.

15

*28 U.S.C. § 1404 Motion to Transfer Venue*

Defendants argue that venue is not proper in this Court and any issues or party not dismissed should be transferred to Wisconsin under 28 U.S.C. § 1404 in order to equitably reduce the burdens for both the parties and witnesses on the issues presented.

Plaintiffs argue that the Eastern District of Texas, Sherman Division is the proper venue pursuant to the totality of all public and private nonexclusive factors, and the case should not be transferred.

The Court must first address the threshold issue of whether the "district to which transfer is sought would have been a district in which the claim could have been brought," or whether all parties have consented to a particular jurisdiction. *In re Volkswagon AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagon I*"). The parties do not consent to a particular jurisdiction. Defendants seek transfer of the case to the Eastern District of Wisconsin. Defendants reside in the state of Wisconsin, making the Eastern District of that state a proper venue under 28 U.S.C. § 1391(b)(1). Having met this threshold issue, the Court will now conduct the transfer-of-venue analysis.

### *Private Interest Factors*

The Fifth Circuit considers four non-exclusive "private" factors when determining whether to transfer venue under § 1404(a): (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that would make trial of a case easy, expeditious, and inexpensive. *In re Volkswagon of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagon II*").

The first private interest factor is the relative ease of access to the sources of proof. *Volkswagon I*, 371 F.3d at 203. "The Fifth Circuit has cautioned this factor remains relevant

despite technological advances having made electronic document production commonplace." *DataQuill, Ltd. v. Apple, Inc.*, No. A-13-CA-706-SS, 2014 WL 2722201, at *3 (W.D. Tex. 2014) (citing *Volkswagon II*, 545 F.3d at 316).  However, "the location of documents is given little weight in determining proper venue unless the unless the documents 'are so voluminous [that] their transport is a major undertaking.'"  *Barnes and Noble Booksellers, Inc. v. DDR DB SA Ventures, LP*, No. SA05CA002XR, 2005 WL 1279192, at *2 (W.D. Tex. 2005) (quoting *Gardipee v. Petrol. Helicopters, Inc.*, 49 F. Supp. 2d 925, 931 (E.D. Tex. 1999)); *see Cont'l Airlines, Inc. v. Am. Airlines, Inc.*, 805 F. Supp. 1392, 1397 (S.D. Tex. 1992) ("[D]ocuments can be produced and examined anywhere for discovery purposes.").

Defendants do not allege facts relevant to this factor that would support transfer to Wisconsin.  Plaintiffs, on the other hand, state that all hard documentation and back-up files are located at Bride's principal place of business in Denton County, Texas.  While the Court acknowledges that the mere existence of hard copies and back-ups is not dispositive, in the absence of contradictory evidence from Defendants, the Court finds this factor weighs in favor of retaining the case.

The Court next asks whether transfer benefits the availability of compulsory process.  A court's subpoena may command a person to attend a trial, hearing, or deposition "within 100 miles of where the person resides, is employed, or regularly transacts business in person, if the person (i) is a party or party's officer; or (ii) is commanded to attend a trial and would not incur substantial expense."  FED. R. CIV. P. 45(c).

The parties do not advance any arguments on this factor.  Defendants do reside in Wisconsin, and they note the existence of one witness, Todd Edwards, who is also a resident of Wisconsin.  The Eastern District of Wisconsin would, arguably, have subpoena power over

Edwards.  However, Plaintiffs offer a list of eight material witnesses—all of whom reside in Texas.  No facts indicate that those witnesses regularly transact business in the Eastern District of Wisconsin in person as to position them within the reach of that court's subpoena.

In contrast, the Eastern District of Texas would have subpoena power over Plaintiffs' material witnesses.  This factor therefore favors the case remaining in the Eastern District of Texas.

The Court must decide if transfer would benefit the costs of attendance for willing witnesses.  In *Volkswagon II*, the Fifth Circuit noted that "[a]dditional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time in which these fact witnesses must be away from their regular employment."  545 F.3d at 317.  "When the distance between an existing venue for trial of a matter and proposed venue under § 1404(a) is more than 100 miles, the factor of convenience to witnesses increases in direct relationship to the additional distance to be traveled."  *Volkswagon I*, 371 F.3d at 204–05.  "The convenience of witnesses is probably the single most important factor in the transfer analysis."  *In re Genetech, Inc.*, 556 F.3d 1338, 1342 (Fed. Cir. 2009) (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 759, 763 (S.D. Tex. 2009)).  Finally, "among party and non-party key witnesses, a court should give greater weight to the availability and convenience of non-party, key witnesses."  *Id.*

Defendants do not discuss the cost of attendance for willing witnesses outside of Edwards.  Regarding Edwards, Defendants only state that Edwards resides in Wisconsin.  The majority of Defendants' arguments for transfer revolve around the inconvenience of litigating in this Court for Defendants themselves.  Defendants note that DeMaster is an "essential worker" and that he cannot leave his four children alone.  Defendants also state that they have no contacts, ties, or resources in Texas, no place to stay in Texas, and no knowledge of the area.  Further, Defendants claim that

Duval, a proposed Plaintiffs' witness, and his wife have no children and frequently travel and take vacations to multiple destinations with lots of flexibility based on their "ministry" online presence.

The Court does not look strictly to the convenience of the parties when determining whether a transfer under § 1404(a) is appropriate.  The distance between the Eastern District of Texas and the Eastern District of Wisconsin is greater than 100 miles.  Thus, the Court looks closely at the convenience to the witnesses—*especially* those key non-party witnesses.  Plaintiffs' comingled list of material party and non-party witnesses includes all Texas residents.  Those key non-party witnesses would have to travel to Wisconsin, likely incurring additional meal, lodging, and overnight expenses.  Further, the one out-of-state witness, Edwards, has consented to traveling to Texas to litigate the matter.  Thus, the Court finds that this factor weighs heavily in favor of retaining the case.

 The final private interest factor takes into consideration all other practical problems that make trial of a case easy, expeditious, and inexpensive.  Defendants do not advance any arguments as to this point.  Plaintiffs, however, note that the Court has already issued a preliminary injunction in this case.  Additionally, the Court is versed with the facts and case law regarding Plaintiffs' claims.  The Court therefore finds that this factor weighs in favor of retaining the case in the Eastern District of Texas.

Each factor analyzed by the Court supported the case remaining within the Eastern District of Texas. The Court therefore finds that the private interest factors weigh in favor of retention.  Next, the Court analyzes the public interest factors.

### Public Interest Factors

The Fifth Circuit also applies four non-exclusive public interest factors in determining whether to transfer a case pursuant to § 1404(a): (1) the administrative difficulties flowing from

court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of law or the application of foreign law. *Volkswagon II*, 545 F.3d at 315.

In considering the administrative difficulties flowing from court congestion, the speed with which a case can come to trial and be resolved may be considered. *Id.* at 316; *Gates Learjet Corp. v. Jenson*, 743 F.2d 1325, 1337 (9th Cir. 1984) ("[T]he real issue is not whether [transfer] will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket.").

The most recent statistics obtained by the Court for the twelve-month period ending on June 30, 2020 indicate that the median time from filing to trial in civil cases in the Eastern District of Texas was 17.7 months.[3]  In the Eastern District of Wisconsin, the median time between filling and trial was 31.5 months.[4]  The median time from filing to disposition in the Eastern District of Texas was 9.2 months.[5]  In the Eastern District of Wisconsin, the medial time was 7.2 months.[6]

This factor weighs in favor of retention as the time between filing and trial in the Eastern District is almost twice that of the Eastern District of Wisconsin, and the filing to disposition speed in both districts are similar.

The second public interest factor is the local interest in having localized interests decided at home. *Volkswagon II*, 545 F.3d at 315.  "Jury duty is a burden that ought not be imposed upon

---

[3] *See* Federal Court Management Statistics, June 2020,
https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2020.pdf, accessed August 27, 2020.
[4] *See* Federal Court Management Statistics, June 2020.
[5] *See* Federal Court Management Statistics, June 2020.
[6] *See* Federal Court Management Statistics, June 2020.

the people of a community which has no relation to the litigation." *Affinity Labs of Tex. v. Samsung Elecs. Co.*, 968 F. Supp. 2d 852, 855 (E.D. Tex. 2013) (citing *Volkswagon I*, 371 F.3d at 206).

The parties do not make arguments concerning this factor outside those already analyzed by the Court.  The principal place of business of Bride is located in the Eastern District of Texas. Additionally, a number of witnesses for Plaintiffs live in the Eastern District of Texas.  The Court determines that the Eastern District does have a relation to the litigation as to not make jury duty unnecessarily burdensome on its residents.

Further, the State of Texas has an interest in ensuring its residents and businesses are protected from harm.  However, the Eastern District of Wisconsin has the same interest.  The Court therefore finds that this factor is neutral.

Next, the Court considers whether the familiarity of the forum with the matter's governing law affects the transfer analysis.  There is no reason to think any district court would be more or less familiar with the federal causes of action alleged by Plaintiffs.  *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (noting federal courts are equally capable of applying federal law).  However, Plaintiffs also allege a number of Texas state law claims.  Additionally, the parties have agreed that Texas law will govern the action. Defendants do not make an argument that the Eastern District of Wisconsin is in a better, or even similar, position to interpret Texas law. Plaintiffs, however, argue that the Eastern District of Texas is in a better position to interpret and analyze relevant Texas law than a Wisconsin forum.  The Court agrees and finds that this factor weighs in favor of retaining the case in the Eastern District of Texas.

The last factor considered by the Court is the avoidance of unnecessary problems of conflicts of law or the application of foreign law.  The parties do not dispute that Texas law governs

the case.  Defendants do not argue that transferring the case somehow changes that result. Therefore, the Court determines that factor is neutral.

Three of the four private interest factors favored the Eastern District of Texas retaining the case.  Two of the public interest factors favored retention, and two were neutral.  Having considered all the factors, the Court finds that venue is proper in the Eastern District of Texas, and that the parties have failed to show that transfer to the proposed forum would be clearly more convenient than the current venue.  Defendant has failed to meet the significant burden to show good cause for the transfer as required under *Volkswagon II*. 545 F.3d at 315 (holding that "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected.").

## CONCLUSION

It is therefore **ORDERED** Defendant's Motion to Dismiss Under Rule 12(b)(2), 12(b)(3), & 12(b)(6); or in the Alternative to Transfer Venue Under 28 U.S.C. §1404 (Dkt. #30) is hereby **DENIED**.

**IT IS SO ORDERED**.

**SIGNED this 20th day of November, 2020.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

22